Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
Email: ccottrell@schneiderwallace.com
          dleimbach@schneiderwallace.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile:  (415) 233-7101
Email: rsb@boulter-law.com

Attorneys for Plaintiff and the Putative Classes
and Collective

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CAMPBELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> FAF, INC., FORWARD AIR CORPORATION, PRIROITY CAPITAL GROUP D/B/A PRIORITY LEASING, ODYSSEY TRANSPORT, LLC, <br><br> Defendants. | Case No.: **'19CV0142 WQHBLM** <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This is a class and collective action lawsuit against FAF, Inc., Forward Air Corporation, Priority Capital Group, d/b/a Priority Leasing, and Odyssey Transport, LLC (collectively, "Defendants"), to challenge, among other things, its policy and practice of unlawfully misclassifying its  non-exempt hourly Driver employees ("Drivers") as independent contractors exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California wage and hour laws.  As a result of its unlawful misclassification policy and practice, Defendants have (1) failed to provide meal and rest periods and pay premiums for missed breaks pursuant to California Labor Code §§ 226.7 and 512; (2) failed to compensate for all hours worked pursuant to California Labor Code § 204 and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.* ("FLSA"); (3) unlawfully deducted expenses from Drivers' wages in violation of California Labor Code § 2802; (4) failed to pay for waiting time penalties pursuant to California Labor Code §§ 201-203; (5) failed to provide timely and itemized wage statements pursuant to California Labor Code § 226; and (6) engaged in unfair business practices pursuant to California Business and Professions Code §§ 17200, *et seq;* (7) failed to provide minimum wage required under Ohio law, ORC § 4111.13, *et seq.,* (8) engaged in unfair, deceptive, and unconscionable acts and practices under the Ohio Consumer Sales Protection Act, ORC § 1345 *et seq.;* and (9) violated the common laws of fraud and unjust enrichment.

2.     Plaintiff Kevin Campbell (hereinafter "Plaintiff") and the members of the proposed Classes and Collective are current and former Drivers employed by Defendants.   Drivers for Defendants are responsible for safely operating a commercial vehicle and transporting customer cargo to their destination in a timely manner.  Drivers' typically haul air cargo for Defendants, and transport products between terminal hubs at major airports.

3.     Despite classifying Drivers as "independent contractors," Defendants treat Plaintiff and Drivers as employees.  Defendants prevent Drivers from engaging in business with anyone other than Defendants, thereby making them financially dependent on Defendants.  Additionally, Defendants exercise significant control over, among other things, the way that Drivers performed their job duties, the tools and equipment Drivers are required to use to perform their job duties, Drivers' rate of pay, and Drivers' ability to work for any other businesses.  Defendants fix the compensation paid to Drivers.  Finally, Drivers perform duties consistent with Defendants' central business.  Drivers make deliveries on behalf of Defendants and many Drivers work full-time for Defendants for many years.

4.     Plaintiff and putative Class and Collective members regularly work in excess of twelve hours a day, oftentimes between sixteen and seventeen hours a day, up to seven days a week. Despite their long shifts, Plaintiff and putative Class and Collective members are routinely unable to take compliant meal and rest periods.

5.     In addition, Defendants fail to maintain proper records showing all hours worked by Plaintiff and putative Class and Collective members.

6.     Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without reimbursement.  For example, Plaintiff and putative Class and Collective members are not reimbursed for truck lease payments, gasoline and other expenses incurred when driving for Defendants.

7.     Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they work and the amount of wages they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

8.     Because of these violations, Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the FLSA, California Labor

1  Code, Industrial Welfare Commission ("IWC") Wage Order 9-2001, and the Ohio
2  Revised Code. Defendants are also liable for various other penalties under the Labor
3  Code, and for violation the Unfair Competition Law, California Business and
4  Professions Code §§17200, *et seq.* ("UCL").

5  9.     Plaintiff also seeks relief for Defendants' misrepresentations and
6  omissions of material fact regarding the income Drivers would earn, the miles they
7  would drive, and the nature of the economic opportunity Defendants were offering to
8  them.

9  10.    Plaintiff also seeks declaratory, equitable, and injunctive relief, including
10  restitution and disgorgement of profits.

11  11.    Finally, Plaintiff seeks reasonable attorneys' fees and costs under the
12  FLSA, Ohio Revised Code, California's Unfair Competition Law, and the California
13  Labor Code.

14  **JURISDICTION AND VENUE**

15  12.    This Court has federal question jurisdiction over this action pursuant to
16  28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law
17  claims pursuant to 28 U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. §
18  216(b).

19  13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A
20  substantial part of the events or omissions giving rise to Plaintiff's claims occurred
21  in this judicial district.

22  **PARTIES**

23  14.    Plaintiff is a resident of the State of California.  Plaintiff was employed
24  as a Driver for Defendants until approximately September of 2018. At all relevant
25  times, Defendants misclassified Plaintiff as an independent contractor when he was
26  in fact a non-exempt employee. Plaintiff would regularly engage in Defendants'
27  business in the city and county of San Diego, California.

28

15.    Plaintiff is informed, believes, and thereon alleges that Defendant Forward Air Corporation is a Tennessee corporation with its principal place of business in Greenville, Tennessee.  Forward Air operates through terminal hubs near major airports.  In California, Forward Air operates out of locations in Sacramento, Los Angles, San Francisco, and San Diego.  During the relevant time period, Forward Air Corporation was, and still is, regularly engaged in business throughout the United States, including in the State of California.  Forward Air Corporation's primary business consists of providing transportation services; primarily, air cargo between terminal hubs at major airports.  Plaintiff is further informed, believes, and thereon alleges that Forward Air Corporation employs Drivers throughout Northern California.

16.    Plaintiff is informed, believes, and thereon alleges that Defendant FAF, Inc., is a Tennessee corporation with its principal place of business in Greenville, Tennessee. FAF is a subsidiary of Forward Air.  FAF's primary business consists of providing transportation services; primarily, air cargo between terminal hubs at major airports. During the relevant time period, FAF was, and still is, regularly engaged in business throughout the United States, including in the State of California.  Plaintiff is further informed, believes, and thereon alleges that FAF employs Drivers throughout Northern California.

17.    Plaintiff is informed, believes, and thereon alleges that Defendant Odyssey Transport, LLC, is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa.  Odyssey Transport works hand-in-hand with First Priority and FAF in providing transportation services for their shared clients.  Odyssey Transport paid Plaintiff and other Drivers for FAF's and First Priority's transportation services, and FAF and First Priority would compensate Odyssey Transport accordingly.  During the relevant time period, Odyssey Transport was, and still is, regularly engaged in business throughout the United States, including in the

1 State of California.  Plaintiff is further informed, believes, and thereon alleges that

2 Odyssey Transport employs Drivers throughout Northern California.

3     18.   Plaintiff is informed, believes, and thereon alleges that Defendant

4 Priority Capital Group, d/b/a Priority Leasing, is an Iowa corporation with its

5 principal place of business in Polk City, Iowa.  During the relevant time period,

6 Priority Leasing was, and still is, regularly engaged in business throughout the United

7 States, including in the State of California.  Priority Leasing works hand-in-hand with

8 Forward Air, FAF, and Odyssey Transport in arranging for trucks to be used in

9 Defendants' hauling business, and in concert with other Defendants, dictates the

10 terms under which Drivers must operate when driving for Defendants.

11     19.   Plaintiff is informed and believes that Defendants Forward Air

12 Corporation, FAF, Odyssey Transport, and Priority Leasing are or were

13 the joint employers of Plaintiff and members of the Classes and Collective for

14 purposes of this action.

15     20.   Plaintiff is informed and believes that each and every one of the acts and

16 omissions alleged herein were performed by, and/or attributable to, the individual

17 defendants acting as agents and/or employees, and/or under the direction and control

18 of each of the other, and that said acts and failures to act were within the course and

19 scope of said agency, employment and/or direction and control.

20     21.   Defendants, individually and in the aggregate, direct, control, and

21 supervise, directly and indirectly, the work of Plaintiff and members of the Class and

22 Collective. Defendants jointly dictate the terms of Drivers' work, including the

23 equipment used, rules and restrictions for using the equipment, policies and

24 procedures Drivers must observe when carrying out their duties, as well as Drivers'

25 pay.

26     22.   As employers of Plaintiff, Class, and Collective members, Defendants,

27 and each of them, are solely, jointly, and severally liable for back pay and other

28

---

1   economic damages, including statutory penalties, owed to Plaintiff, Collective, and

2   Class Members under common law and by statute.

3       23.    Throughout this Complaint, any reference to the "Defendants" is

4   intended to refer to Forward Air Corporation, FAF, Odyssey Transport, and Priority

5   Leasing, jointly as employers.

6       24.    Defendants' annual gross sales exceed $500,000.

7   **FACTUAL ALLEGATIONS**

8   **A. General Background**

9       25.    At all relevant times, Defendants were Plaintiff's "employer" within the

10   meaning of the FLSA, Ohio, and California law. FAF and Forward Air providing

11   trucking and logistics services across the country. Forward Air operates through

12   terminal hubs near major airports. In California, Forward Air operates out of

13   locations in Sacramento, Los Angles, San Francisco, and San Diego. Plaintiff and

14   Class and Collective members worked as truck drivers transporting primarily air

15   cargo. Their duties include transporting cargo loads between destinations. They are

16   classified as independent contractors, and paid on a per-mile basis. This rate is

17   determined by Defendants.  This rate is non-negotiable.  Defendants can unilaterally

18   change this mileage rate.

19       26.    Throughout the time period beginning four years prior to the filing of this

20   lawsuit, through the present, Defendants have employed numerous Drivers and

21   contracted with numerous retail and wholesale clients around the country to provide

22   transportation services.  Drivers do not perform any activity outside the usual course

23   of Defendants' business.

24       27.    Plaintiff applied to drive for FAF on or around July 25, 2018.  Plaintiff

25   was contacted by a recruiter shortly thereafter, and told to report to Ohio for driver

26   orientation.

27

28

28.     Defendants require prospective Drivers, including Plaintiff, to report to a location in Ohio before beginning their employment to complete mandatory orientation. Orientation lasts between two-to-three days, eight-to-ten hours a day. None of this time is compensated.

29.     During orientation, Drivers, including Plaintiff, are trained on running an "owner-operator" trucking business and on Defendants' policies and procedures. Drivers take simulator exams to confirm their ability to drive a truck, take a medical exam, and complete paperwork necessary to drive for Defendants. Plaintiff and other Drivers also learn how to use the Qualcomm communication device in carrying out Defendants' transportation business.

30.     During this orientation, Drivers such as Plaintiff are told that they would be leasing a truck from Priority Leasing, would be paid by a company named Odyssey Transport, and that FAF paid Odyssey Transport.

31.     During orientation, Plaintiff and other Drivers are required to fill out a lease agreement for a truck that will be used to haul freight for Defendants.  Plaintiff and other Drivers are required to fill out these agreements and commit to leasing a truck without ever seeing the truck. In Plaintiff's case, he was required to complete a lease agreement for a truck while at orientation in Ohio, even though he was told that he would obtain the truck once he returned to California.

32.     During orientation, Defendants make numerous misrepresentations and omissions about the owner-operator "opportunity."  For example, Defendants represent that Drivers can expect to receive between 2,700 and 3,000 miles per week, when in reality, they receive less than 2,000 miles per week.  Defendants do not disclose the turnover rates of prior owner-operators.  Defendants do not disclose the lack of success experienced by past Drivers.  Defendants do not disclose that pursuant to the terms of the various agreements Drivers must execute, they will not be

1   permitted to haul for any other carrier, and will be financially dependent on
2   Defendants for their livelihood.

3       33.    Following orientation, Plaintiff was instructed to return to California,
4   where Defendants arranged for him to pick up a truck. Upon receiving his truck in
5   California, Plaintiff found that it required maintenance and repairs before it would be
6   ready to drive. Plaintiff was ultimately charged to for the repairs necessary to make
7   the truck road-worthy.

8       34.    After Plaintiff's first week of hauling loads, Defendants had deducted the
9   entire sum of Plaintiff's gross pay for "lease" payments and other expenses.
10  Defendants deducted Plaintiff's entire pay for the remaining period in August of
11  2018, after which Plaintiff quit having received $0 from the company.

12      35.    While Plaintiff worked for Defendants, he worked 16-17 hours a day,
13  seven days a week. Because he was classified as an independent contractor and paid
14  by the mile, Plaintiff was not paid for all time worked, including all time spent
15  performing pre and post trip inspections, waiting and detention time, and any other
16  time he was engaged in activities surrounding the hauling of freight, but the wheels
17  on the truck were not moving. In fact, as a direct result of Defendants' efforts to shift
18  its ordinary operating costs onto Plaintiff and other Drivers, Plaintiff did not receive
19  any compensation for the substantial hours Defendants demanded of him. Instead,
20  once Defendants' substantial deductions were taken from Plaintiff's pay, Plaintiff did
21  not receive any compensation from Defendants while working for them.

22      36.    During his employment, Plaintiff was systematically denied the
23  opportunity to take lawfully-complaint meal breaks.  Plaintiff was only instructed by
24  Defendants through the Qualcomm device to take meal breaks at the eight-hour mark,
25  and Plaintiff did not take a thirty-minute meal period within the first five hours of his
26  workday.  Plaintiff was not permitted to take second meal periods for worked
27  performed in excess of the tenth hour of work in a day.  To the extent Plaintiff and

28

Drivers could ever take meal breaks, they were "on duty," as Drivers are ultimately responsible for their truck and cargo, even when they are on a break.

37.     Likewise, Plaintiff was not permitted to take any lawfully-complaint rest breaks.  Plaintiff was never told to take a rest break, nor was he ever told that he should take one.  The transportation duties imposed by Defendants, and the time constraints relating thereto, do not permit Plaintiff or other Drivers the opportunity to take rest breaks. In any event, it is logically impossible for Plaintiff and other Drivers to take a legally-compliant rest breaks.  Because Plaintiff and other Drivers are only compensated by the mile, i.e., the wheels on the truck are turning, a compensated, a duty-free rest break could not possibly be taken by Plaintiff and other Drivers.

38.     Plaintiff and other drivers are also required to incur substantial expenses to carry out Defendants' transportation business.  This includes payments for the trucks, gasoline, licenses and permits, equipment maintenance and repairs, just to name a few.  Defendants require Drivers, including Plaintiff, to have insurance, including, *inter alia*, occupational accident insurance, physical damage insurance, Bob-tail insurance, commercial liability insurance, and a performance bond. Defendants deducts the cost of insurance from Drivers' compensation. In the event a Driver damages or destroys any of Defendants' equipment, the replacement and/or repair cost is deducted by Defendants from the Driver's pay. Defendants deduct vehicle damage charges, vehicle lease charges, administrative charges and other equipment and materials charges from Drivers' and Plaintiff's pay. All of these expenses, and many more, are unlawfully deducted from Plaintiff and Drivers' pay, which not only violates California law, but also violates the FLSA by serving as an unlawful kickback against Plaintiff's and other Drivers' overtime wages, to which they would be due absent Defendants' uniform and unlawful misclassification policy.

39.     Wage statements provided by Defendants do not include the aggregate number of hours worked by Drivers, including Plaintiff.  Instead, wage statements list only the compensated miles and deductions.

**B. Defendants' Control Over Plaintiff, Other Drivers, and the Trucks**

40.     Defendant requires its Drivers, including Plaintiff, to "lease" equipment through a designated leasing company. Defendants retain title and ownership in the trucks, and Defendants completely control how the trucks are used.   Indeed, Defendants' contracts with Plaintiff and other Drivers explicitly state that the trucks can only be used for Defendants' transportation business, and that Defendants would not have leased a truck to Plaintiff and other Drivers if they did not agree to deliver product for Defendants.   Defendants' contracts with Plaintiff and other Drivers allows Defendants to exercise complete control and direction over the performance of Drivers' work.

41.     Defendants require its Drivers to lease a Qualcomm so that the Drivers receive work assignments from Defendants and to communicate with Defendants' management while working.  Through this device, Plaintiff and other Drivers are required to notify Defendants when they have picked up or dropped off a load, when they will be arriving at a pick up or drop off location, and provide status updates. Routes provided by Defendants specify the point of origin, the destination, and the deadline for completion.  Drivers who decline routes from Defendants are forced to wait, without compensation, for another driving opportunity, thereby pressuring them into accepting all offered assignments. Defendants constantly monitor Plaintiff and other Drivers through these devices.   Defendants deduct the costs of this communication device on a weekly basis.

42.     Defendants have the authority to terminate Drivers at will, including for failing to abide by Defendants' policies and practices. Indeed, Defendants can terminate Drivers for any reason.

43.     Drivers, including Plaintiff, are assigned deliveries for Defendants' clients.     Defendants do not allow Drivers to exchange assignments amongst themselves or to subcontract the delivery to another person or entity. By the terms of the lease agreement, Defendants also prohibit Drivers from using their leased vehicles for personal uses or for other transportation companies.

44.     Defendants exercise significant behavioral and financial control over Drivers, including Plaintiff, establishing that they are in fact employees.  Specifically, this control includes the following:  Drivers are required to purchase Defendants' logos and place them on their "leased" vehicles; Drivers are required to lease a Qualcomm in order to accept work assignments; Drivers are expected to complete deliveries in the time specified and determined by Defendants; Drivers are required to check in with Defendants' supervisors using their Qualcomm several times a day; Drivers are not permitted to work for other carriers; Drivers are required to comply with Defendants' policies, procedures and practices or suffer penalties for non-compliance; Drivers are required to prepare and submit required documentation in accordance with Defendants' policies and procedures; Drivers are required to purchase or lease equipment and vehicles from Defendants; and Defendants, through their uniform contractual arrangements, completely control the trucks, such as modifications, improvements, repairs, subleases, liens, and the like.

45.     Defendants' unlawful conduct has been widespread, repeated, and consistent throughout its operations in California and the United States.  Defendants knew or should have known that its policies and practices have been unlawful and unfair.

46.     Defendants conduct is willful, carried out in bad faith, and caused significant damages to its employees in an amount to be determined at trial.

## **COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

47.     Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for minimum wage violations, liquidated damages, and attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former Drivers who were classified as independent contractors and provided transportation services for FAF, Inc., Forward Air Corporation, or Odyssey Transport, LLC, at any time during the period beginning three years prior to the filing of this Complaint, and continuing through the present, who have not opted into *Blodgett v. FAF Inc., et al.,* Case Number 2:18-cv-00015, filed in the United States District Court for the Eastern District of Tennessee.

48.     Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA claims are similar to the claims of the Collective members.

49.     The Collective members are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that misclassifies them as exempt independent contractors, and thus requires them to perform work without compensation in violation of the FLSA.

50.     Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

51.     Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

52.     The similarly situated Collective members are known to Defendants, are readily identifiable, and may be located through Defendants' records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively

1   adjudicating their claims for unpaid wages, liquidated damages (or, alternatively,

2   interest), and attorneys' fees and costs under the FLSA.

3   **<u>CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23</u>**

4        53.    Plaintiff seeks to maintain his California state law claims as a California-

5   only class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular,

6   Plaintiff seeks to certify the following Rule 23 Sub-Class:

7
8            All current and former Drivers who were classified as independent contractors and provided transportation services for FAF, Inc., Forward Air Corporation, or Odyssey

9            Transport, LLC, in the State of California, at any time during the period beginning four years prior to the filing of this

10           action and continuing through the present.

11   (the "California Class").

12        54.    Plaintiff seeks to maintain his Ohio minimum wage law claims as a

13   national class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In

14   particular, Plaintiff seeks to certify the following Rule 23 Sub-Class:

15
16            All current and former Drivers who were classified as independent contractors and attended mandatory orientation in Ohio, during the period beginning three years prior to the

17           filing of this action and continuing through the present.

18   (the "Ohio Minimum Wage Class").

19        55.    Plaintiff seeks to maintain his Ohio Consumer Sales Practices Act claims

20   as a national class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

21   In particular, Plaintiff seeks to certify the following Rule 23 Sub-Class:

22            All current and former Drivers who were classified as independent contractors and leased a truck through FAF, Inc.,

23            Forward Air Corporation, or any other entity to whom Drivers were referred by FAF, Inc. or Forward Air Corporation during

24           the period beginning two years prior to the filing of this action and continuing through the present.

25
26   (the "Ohio Consumer Protection Class").

27
28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

56.     Plaintiff seeks to serve as a Class Representative for the above-defined Classes.

57.     Plaintiff's California state law claims have been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

58.     Numerosity:   The potential members of the Classes are believed to exceed 100, and the Class Members are so numerous that joinder of all members is impracticable.

59.     Commonality:  There are questions of law and fact common to Plaintiff and the Classes that predominate over any questions affecting only individual members of the Classes.   Examples of these common questions of law and fact include, without limitation:

a. Whether Defendants, through their shared policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from California minimum wage protections, fail to pay members of the California Class the minimum wage they are owed in violation of California Labor Code § 1194;

b. Whether Defendants fail to maintain proper records for members of the California Class, including but not limited to all hours worked, in violation of the California Labor Code and Wage Orders;

c. Whether Defendants fail to compensate members of the California Class for all hours worked, in violation of the California Labor Code and Wage Orders;

d. Whether Defendants fails to authorize and permit, make available, and/or provide members of the California Class with the timely meal

and rest periods to which they are entitled in violation of the California Labor Code and Wage Orders;

e. Whether Defendants fail to reimburse members of the California Class for reasonable and necessary business expenses in violation of California Labor Code § 2802;

f. Whether Defendants fail to timely pay members of the California Class for all wages owing upon termination of employment in violation of California Labor Code;

g. Whether Defendants fail to provide members of the California Class with timely, accurate itemized wage statements in violation of California Labor Code and Wage Orders;

h. Whether Defendants failed to pay Ohio Minimum Wage Class Members minimum wage for mandatory orientation;

i. Whether Defendants' misrepresentations and omissions in its marketing and sale of the owner-operator opportunity to the Ohio Consumer Protection Class constitutes an unfair, deceptive, or unconscionable act within the meaning of ORC § 1345 *et seq.,*

j. Whether Defendants engaged in constructive fraud and negligent misrepresentation and had and breached a duty of disclosure by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles Defendants provided to Drivers;

k. The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

60.     Typicality:   Plaintiff's claims are typical of the claims of the Classes. Defendants' common course of unlawful conduct as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and damages. Plaintiff's allegations – both legal and factual – are thereby representative of and co-extensive with the claims of the Classes.

61.     Adequacy:   Plaintiff does not have any conflicts of interest with members of the Classes he seeks to represent, and Plaintiff will prosecute this case vigorously on behalf of the proposed Class members.   Plaintiff's Counsel are competent and experienced in litigating wage and hour and complex commercial class actions. Plaintiff will fairly and adequately represent and protect the interests of the Class he seeks to represent.

62.     Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members.  Each Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policy and practice of misclassifying its Drivers as independent contractors, exempt from prevailing state wage and hour laws, and its other violations of law stated in this complaint.  Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

63.     Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**Failure to Pay Wages and Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.***
**(On Behalf of Collective)**

64.     Plaintiff re-alleges and incorporates the above paragraphs as though fully

1    set forth herein.

2        65.    Defendants violated the FLSA by knowingly failing to maintain records

3    of all hours worked.

4        66.    Defendants violated the FLSA by knowingly failing to compensate

5    Plaintiff and putative FLSA Collective members for all hours worked and by

6    knowingly failing to pay Plaintiff and putative FLSA Collective members the

7    federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours

8    worked.

9        67.    In addition, or in the alternative, Defendants violated 29 U.S.C. § 206 by

10   deducting costs for expenses, tools and equipment from Plaintiff and Class members'

11   wages so as to cause their wages to at times fall below the federally mandated

12   minimum wage rate.

13       68.    Defendants' actions were willful.  Accordingly, Defendants are liable

14   under 29 U.S.C. § 216(b) to Plaintiff and Class members for liquidated damages in

15   an amount equal to the wages JCT failed to pay as a result of the foregoing violation

16   of 29 U.S.C. § 206.

17       69.    Plaintiff and Class members are entitled to all of the unpaid wages, plus

18   an additional equal amount as liquidated damages, court costs, attorneys' fees and

19   expenses they expend in successfully bringing this action to recover their unpaid

20   wages and any other relief deemed appropriate by the Court.

21                        **SECOND CAUSE OF ACTION**
                          **Failure to Pay Minimum Wage**
22   **California Labor Code §§ 200, 1182.11, 1182.12, 1194, 1197, 1197.1, 1198**
                        **(On Behalf of the California Class)**
23

24       70.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though

25   fully set forth herein.

26       71.    Defendants intentionally and willfully pay Plaintiff and putative Class

27   members below minimum wage by opting to pay Drivers at a rate determined per

28

1    mile driven on route.  After deducting costs for expenses, tools and equipment from

2    Plaintiff and Class members' wages, Driver compensation is lowered substantially.

3    After deductions, Drivers often make less than the state-mandated minimum wage

4    for each hour they work.

5         72.    Labor Code § 1194(a) provides as follows:

6              Notwithstanding any agreement to work for a lesser wage,
              any employee receiving less than the legal minimum wage or
7              the legal overtime compensation applicable to the employee
              is entitled to recover in a civil action the unpaid balance of the
8              full amount of this minimum wage or overtime compensation,
              including interest thereon, reasonable attorneys' fees, and
9              costs of suit.

10        73.    Labor Code § 200(a) defines wages as "all amounts for labor performed

11   by employees of every description, whether the amount is fixed or ascertained by the

12   standard of time, task, piece, commission basis, or other method of calculation."

13        74.    Labor Code § 1198 makes it unlawful for employers to employ

14   employees under conditions that violate the Wage Order.

15        75.    IWC Wage Order 9-2001(2)(H) defines hours worked as "the time during

16   which an employee is subject to the control of an employer, and includes all the time

17   the employee is suffered or permitted to work, whether or not required to do so."

18        76.    In violation of California law, Defendants knowingly and willfully refuse

19   to pay Drivers the minimum wage.  Therefore, Defendants committed, and continue

20   to commit, the acts alleged herein knowingly and willfully, and in conscious

21   disregard of the Plaintiff and the putative Class members' rights.  Plaintiff and the

22   putative Class are thus entitled to recover nominal, actual, and compensatory

23   damages, plus interest, attorneys' fees, expenses, and costs of suit.

24        77.    As a proximate result of the aforementioned violations, Plaintiff and the

25   putative Class have been damaged in an amount according to proof at time of trial.

26        78.    Wherefore, Plaintiff and the putative Class request relief as hereinafter

27   provided.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                      18

### THIRD CAUSE OF ACTION
### Failure to Pay for All Hours Worked
### California Labor Code §§ 201, 202, 204, and 221-223
### (On Behalf of the California Class)

79.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

80.     Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

81.     Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

82.     Labor Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

83.     Labor Code §§ 221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

84.     Defendants have willfully maintained and continues to maintain a policy of denying Plaintiff and putative Class members any wages for activities they must perform before and after hauling products. At all relevant times, Plaintiff and putative Class members have been required by Defendants to work off-the-clock without compensation for the work they perform. For example, while Drivers are compensated for driving time based on mileage, Drivers are not compensated for all time spent loading, unloading, refueling, completing paperwork, completing training, waiting in detention time, or performing other necessary tasks.

85.     While Defendants do not compensate Drivers for these work activities, Defendants require Drivers to perform them. This is time during which Drivers are subject to the control of Defendants and is compensable time. Defendants' failure to

1  compensate Drivers for this time results in the denial of wages for all hours worked

2  in violation of the Labor Code provisions cited herein.

3      86.  Defendants have committed these acts knowingly and willfully, with the

4  wrongful and deliberate intention of withholding, deducting and reducing wages

5  owed to Plaintiff and the Class for time spent on the aforementioned activities.

6      87.  As a proximate result of these violations, Defendants have damaged

7  Plaintiff and the putative Class members in an amount to be determined according to

8  proof at trial.

9      88.  Wherefore, Plaintiff and the putative Class request relief as hereinafter

10  provided.

11  **FOURTH CAUSE OF ACTION**

        **Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**

12          **California Labor Code §§ 203, 223, 226.7, 512, and 1198**

13          **(On Behalf of the California Class)**

14      89.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though

15  fully set forth herein.

16      90.  Defendants routinely deny timely meal periods to Plaintiff and putative

17  Class members.  Despite long work days regularly lasting well in excess of eight

18  hours, deadlines imposed by Defendants prevent Plaintiff and putative Class

19  members from taking a meal period.  When Drivers do get a meal period, they are

20  often untimely.  In addition, when Plaintiff and putative Class members work more

21  than ten hours in a day, Defendants regularly does not make a second meal period

22  available to them. To the extent meal periods are taken at all, Drivers are not relieved

23  of all responsibilities, and these breaks are on duty under California law

24      91.  Plaintiff and putative Class members are not paid one hour of premium

25  pay for the missed meal periods.

26      92.  Similar to meal periods, Defendants routinely fail to make rest periods

27  available to Plaintiff and putative Class members.  Plaintiff's and putative Class

28

members' schedules do not allow them to take rest periods throughout the day.  When available, rest periods are often too short.  Plaintiff and putative Class members do not receive premium pay for their missed rest periods as required by California law.

93.     Labor Code §§ 226.7 and 512 and IWC Wage Orders 9-2001(11) and 9-2001(12)  require JCT to authorize and permit meal and rest periods to its employees. Labor Code §§ 226.7 and 512 and the applicable Wage Order prohibits employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods.  Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable wage orders.

94.     Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted.  Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

95.     Despite these requirements, Defendants have knowingly and willfully refused to perform its obligation to authorize and permit and/or make available to Plaintiff and the Class the ability to take the off-duty meal and rest periods to which they are entitled.  Defendants have also failed to pay Plaintiff and the Class one hour

of pay for each off-duty meal and/or rest periods that they are denied. Defendants' conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

96.    As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

97.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
### Failure to Reimburse for Necessary Business Expenditures
### California Labor Code § 2802
### (On Behalf of the California Class)

98.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

99.    Defendants do not reimburse Plaintiff and putative Class members for necessary business expenditures.

100.    Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

101.    Defendants regularly require Plaintiff and putative Class members to pay out of pocket for truck payments, gasoline, and vehicle maintenance. Defendants regularly require Plaintiff and putative Class members to pay out of pocket for

1    various insurance and equipment. Defendants do not reimburse Plaintiff and the

2    putative Class members for these expenditures.

3        102.   Defendants are liable to Plaintiff and putative Class members for the

4    unreimbursed expenses and civil penalties, with interest thereon.   Furthermore,

5    Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

6        103.   Wherefore, Plaintiff and the putative Class request relief as hereinafter

7    provided.

8                          **SIXTH CAUSE OF ACTION**
                    **Failure to Maintain Proper Payroll Records**
9                       **California Labor Code § 1174**
                       **(On Behalf of the California Class)**
10

11       104.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though

12   fully set   forth herein.

13       105.   Defendants do not maintain proper records of Plaintiff and putative Class

14   members, including of all hours worked in a pay period, as required by California

15   law.

16       106.   Labor Code § 1174(d) provides:

17            Every person employing labor in this state shall:
              . . .
18            (d) Keep, at a central location in the state or at the plants or
              establishments at which employees are employed, payroll
19            records showing the hours worked daily by and the wages
              paid to, and the number of piece-rate units earned by and any
20            applicable piece rate paid to, employees employed at the
              respective plants or establishments. These records shall be
21            kept in accordance with rules established for this purpose by
              the commission, but in any case shall be kept on file for not
22            less than three years. An employer shall not prohibit an
              employee from maintaining a personal record of hours
23            worked, or, if paid on a piece-rate basis, piece-rate units
              earned.
24

25       107.   The IWC Wage Orders also establishes this requirement.   (*See* IWC

26   Wage Order 9-2001(7).)

27       108.   Labor Code § 1174.5 further provides:

28

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                    23

1

2

3

4

> Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

5

109.   Plaintiff seeks to recover damages under this section.

6

110.   Defendants do not maintain proper records for Plaintiff and putative

7

Class members in accordance with Labor Code § 1174 and the IWC Wage Orders.

8

The records do not indicate the number of hours worked by Drivers, among other

9

issues.

10

111.   Defendants are liable to Plaintiff and the putative Class alleged herein

11

for civil penalties.

12

112.   Wherefore, Plaintiff and the putative Class request relief as hereinafter

13

provided.

14

15

16

### SEVENTH CAUSE OF ACTION
**Failure to Provide Accurate Itemized Wage Statements**
**California Labor Code § 226**
**(On Behalf of the California Class)**

17

113.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though

18

fully set forth herein.

19

114.   Defendants do not provide Plaintiff and putative Class members with

20

accurate itemized wage statements as required by California law.  Wage statements

21

provided by Defendants do not indicate the total number of hours worked by Drivers

22

in a pay period.

23

115.   Labor Code § 226(a) provides:

24

25

26

27

28

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

*Campbell v. FAF, Inc., et al.*                                                                          24

exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

116. The IWC Wage Orders also establishes this requirement. (*See* IWC Wage Order 9-2001(7).)

117. Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

118. Defendants do not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders. The wage statements Defendants provides its employees, including Plaintiff and putative Class members, do not indicate how many hours Drivers work.

119. Defendants are liable to Plaintiff and the putative Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with

interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

120.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### EIGHTH CAUSE OF ACTION
**Coerced Purchases**
**California Labor Code § 450**
**(On Behalf of the California Class)**

121.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

122.   California Labor Code § 450 prohibits an employer or agent, or other person, from compelling or coercing any applicant for employment or employee to purchase any thing of value, including any fee of any type to apply for employment, to receive or complete an application for employment, or for an employer to provide, accept or process an application for employment.

123.   Defendants violated California Labor Code § 450 by compelling and/or coercing Plaintiff and the putative Class alleged herein to lease or purchase vehicles and other equipment directly from Defendants or other companies.

124.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### NINTH CAUSE OF ACTION
**Willful Misclassification**
**California Labor Code § 226.8**
**(On Behalf of the California Class)**

125.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

126.   Defendants intentionally and willfully characterized Plaintiff and members of the Class as independent contractors rather than employees in violation of California Labor Code § 226.8.

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                                 26

127.   Defendants have been engaging in a pattern and practice of misclassifying employees as independent contractors for its own financial benefit.

128.   As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and the putative Class alleged herein are entitled to damages in an amount to be determined at trial, civil penalties of not less than ten thousand dollars ($10,000.00) and not more than twenty-five thousand dollars ($25,000.00) for each violation, any other penalties and fines provided by law, interest thereon, attorneys' fees, and costs of suit.

129.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### TENTH CAUSE OF ACTION
**Waiting Time Penalties**
**California Labor Code §§ 201-203**
**(On Behalf of the California Class)**

130.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

131.   Defendants do not provide Plaintiff and putative Class members with their wages when due under California law after their employment with Defendants ends.

132.   Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

133.   Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

134.   Labor Code § 203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

135.   Plaintiff and some of the putative Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

136.   Defendants willfully refused and continues to refuse to pay Plaintiff and putative Class members all the wages that were due and owing to them after termination, including premium pay for missed meal and rest breaks.  As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest

137.   Defendants' willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

138.   In addition, § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

139.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

### ELEVENTH CAUSE OF ACTION
**Violations of the California Franchise Investment Law**
**California Corporations Code §§ 31110, *et seq.***
**(On Behalf of the California Class)**

140.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                                    28

141. If Plaintiff and Class members are determined to be independent contractors, Defendants have uniformly violated the CFIL. If Plaintiff and Class members are determined to be independent contractors, Plaintiff alleges the following:

142. Defendants are in the business of offering franchises to the public in California and sold franchises to Plaintiff and the Class. Defendants were and are franchisors under California law.

143. In or around July of 2018, Defendants offered and sold Plaintiff the owner-operator opportunity, which constituted a franchise under California Franchise Investment Law, Cal. Corp. Code § 31000 et seq.

144. Defendants charged, and Plaintiff and the Class paid, direct fees for the right to purchase the owner-operator opportunity. Specifically, Plaintiff and Class members were required to purchase lease agreements and equipment for the trucks.

145. Defendants provided Plaintiff and Class members the owner-operator agreements under a marketing plan and/or system prescribed in substantial part by Defendants. The purchase and operation of the owner-operator agreements was substantially associated with the trademarks, service marks, trade name, logotype, advertising, or other commercial symbols designated one or more of the Defendants.

146. Defendants failed to register the franchise offer with the California Commissioner of Corporations before, at the time of, and after the offer and sale of the owner-operator agreements. California Corporations Code section 31300 provides that a franchisee may seek damages and rescission in such circumstances.

147. In addition to failing to register the franchise, Defendants have not made the required disclosures to Plaintiffs and Class members at any time prior to the filing of the Complaint herein. Defendants' conduct was willful. California Corporations Code Section 31300 provides that a franchisee may seek damages and recession in such circumstances.

148.   Under California Corporations Code section 31201 it is unlawful to offer or to sell a franchise in California by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Defendants misrepresented the control they would exercise over Plaintiff and other Class members, the independent business nature of the driving opportunity, the compensation paradigm, the turnover rates of Drivers, the amount of miles that Defendants would provide Drivers, and the Drivers' financial dependence on Defendants resulting from becoming owner-operators. These representations and omissions were material, and intended by Defendants to induce Plaintiff and Class members to pursue the owner-operator opportunity.

149.   Plaintiff and Class members relied on Defendants' false and/or misleading representations and material omissions and purchased the owner-operator opportunity and paid substantial sums to Defendants.

150.   Had Plaintiff and Class members known the true facts of the owner-operator opportunity, Drivers would not have purchased the Agreement.

151.   Defendants' fraudulent conduct and statutory violations harmed Plaintiff and the Class, entitling them to compensatory damages, rescission, restitution, costs, attorney fees, and ancillary relief according to proof. *See* Cal. Corp. Code §§ 31300, *et seq.*

152.   Defendants acted with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiff and the Class, entitling them to exemplary damages in an amount according to proof.

153.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

1
2

### TWELFTH CAUSE OF ACTION
**Unlawful Business Practices**
**California Business and Professions Code §§ 17200, *et seq.***
**(On Behalf of the First Sub-Class)**

3      154.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though

4    fully set forth herein.

5      155.   The UCL prohibits unfair competition in the form of any unlawful,

6    unfair, or fraudulent business acts or practices.

7      156.   Business and Professions Code § 17204 allows a person injured by the

8    unfair business acts or practices to prosecute a civil action for violation of the UCL.

9      157.   Labor Code § 90.5(a) states it is the public policy of California to

10   vigorously enforce minimum labor standards in order to ensure employees are not

11   required to work under substandard and unlawful conditions, and to protect

12   employers who comply with the law from those who attempt to gain competitive

13   advantage at the expense of their workers by failing to comply with minimum labor

14   standards.

15     158.   Beginning at an exact date unknown to Plaintiff, but at least since the

16   date four years prior to the filing of this suit, Defendants have committed acts of

17   unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and

18   fraudulent business acts and practices described in this Complaint, including, but not

19   limited to:

20              a.   violations of the FLSA pertaining to the payment of wages;

21              b.   violations of Labor Code § 1194 and IWC Wage Order 9-2001

22                   pertaining to payment of wages;

23              c.   violations of Labor Code §§ 226.7 and 512 and Wage Order 9-2001

24                   pertaining to meal and rest breaks;

25              d.   violations of Labor Code § 2802 regarding indemnification for

26                   necessary expenditures;

27
28

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                                31

e. violations of Labor Code § 226 regarding accurate, timely itemized wage statements;

f. violations of Labor Code § 450 regarding coerced purchases;

g. violations of Labor Code § 226.8 regarding willful misclassification; and

h. violations of Labor Code §§ 201-203.

159. The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 et seq.

160. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, et seq.  Among other things, the acts and practices have taken from Plaintiff and the Class wages rightfully earned by them, while enabling Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

161. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

162. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

163. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.  Plaintiff and the Class members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and

payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of himself as well as others similarly situated.  Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

164.   Plaintiff herein takes upon himself enforcement of these laws and lawful claims.  There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

165.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## THIRTEENTH CAUSE OF ACTION
### (Failure to Pay Minimum Wage (ORC 4111.13)
### On behalf of the Ohio Minimum Wage Class)

166.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

167.   This claim is brought by Plaintiff on behalf of the Ohio Minimum Wage Class.

168.   As detailed above, Defendants required Plaintiff and Ohio Minimum Wage Class members to attend a mandatory, two-to-three day orientation in Ohio, for eight-to-ten hours each day.  None of this time is compensated at the applicable Ohio minimum wage.

169.   The Ohio Constitution Art. II, Section 34, provides as follows :

> Except as provided in this section, every employer shall pay their employees a wage rate of not less than six dollars and eighty-five cents per hour beginning January 1, 2007. On the thirtieth day of each September, beginning in 2007, this state

minimum wage rate shall be increased effective the first day of the following January by the rate of inflation for the twelve month period prior to that September according to the consumer price index or its successor index for all urban wage earners and clerical workers for all items as calculated by the federal government rounded to the nearest five cents. Employees under the age of sixteen and employees of businesses with annual gross receipts of two hundred fifty thousand dollars or less for the preceding calendar year shall be paid a wage rate of not less than that established under the federal Fair Labor Standards Act or its successor law. This gross revenue figure shall be increased each year beginning January 1, 2008 by the change in the consumer price index or its successor index in the same manner as the required annual adjustment in the minimum wage rate set forth above rounded to the nearest one thousand dollars.

170. During the applicable statutory period, the Ohio Constitution Art. II, Section 34a, and the ORC 4111.13 were in full force and effect, requiring that Defendants' hourly employees receive the minimum wage for all hours worked at the rate of seven dollars and ninety five cents ($7.95) per hour commencing January 1, 2014; eight dollars ten cents ($8.10) per hour commencing January 1, 2015; eight dollars fifteen cents ($8.15) per hour commencing January 1, 2017; and eight dollars thirty cents ($8.30) commencing January 1, 2018.

171. ORC 4111.01(A) provides as follows:

"Wage" means compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to the deductions, charges, or allowances permitted by rules of the director of commerce under section 4111.05 of the Revised Code. "Wage" includes an employee's commissions of which the employee's employer keeps a record, but does not include gratuities, except as provided by rules issued under section 4111.05 of the Revised Code.

"Wage" also includes the reasonable cost to the employer of furnishing to an employee board, lodging, or other facilities, if the board, lodging, or other facilities are customarily furnished by the employer to the employer's employees. The cost of board, lodging, or other facilities shall not be included as part of wage to the extent excluded therefrom under the terms of a bona fide collective bargaining agreement applicable to the employee.

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                                 34

172.   ORC 4111.13(C) provides that "[n]o employers shall pay or agree to pay wages at a rate less than the rate applicable under sections 4111.01 to 411.17 . . . Each week or portion thereof for which the employer pays any employee less than the rate applicable under those sections constitutes a separate offense as to each employer."

173.   ORC 4111.13(D) provides that each day of violation of sections 4111.01 to 4111.17 of the ORC constitutes a separate offense.

174.   ORC 4111.14(J) and the Ohio Constitution Art. II, Section 34a provide that damages "shall be calculated as an additional two times the amount of the back wages" in accordance with Section 34a of Article II of the Ohio Constitution.

175.   Pursuant to ORC 4111.14(K) and the Ohio Constitution Art. II, Section 34a, Plaintiff and the putative Class members are entitled to recover unpaid minimum wages for three years prior to the filing of this suit, as well as for reasonable attorneys' fees and costs for their minimum wage claims.

176.   Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class members, Defendants have willfully failed to pay minimum wages as required by law. members are frequently compensated below the statutory minimum.

177.   Plaintiff and putative Class members have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory damages, interest, attorneys' fees, and costs of suit pursuant to ORC 4111.14(J)-(K).

178.   Wherefore, Plaintiffs and the putative Classes request relief as hereinafter provided.

### FOURTEENTH CAUSE OF ACTION
**Violations of the Ohio Consumer Sales Protection Act**
**(On Behalf of the Ohio Consumer Protection Class)**

179.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Campbell v. FAF, Inc., et al.*                                                      35

180.   This cause of action is asserted by Plaintiff on behalf of himself and the Ohio Consumer Protection Class.

181.   The relationship between Defendants and Ohio Consumer Protection Class members involved a "consumer transaction" as that term is defined in R.C. 1345.01(A).

182.   Defendants, acting through its employees, agents, administrators, and/or independent contractors, are "suppliers" as that term is defined in R.C. 1345.01(C).

183.   Plaintiff is a "consumer" as that term is defined in R.C. 1345.01(D).

184.   The foregoing allegations constitute a violation of the Consumer Sales Practices Act ("CSPA") under R.C. 1345 et seq. More specifically, defendants' conduct constitutes unfair or deceptive practices or acts under R.C. 1345.02, and unconscionable consumer acts or sales practices under R.C. 1345.03.

185.   Defendants represent that the subject of the owner-operator opportunity has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have. ORC § 1345.02 (B) (1).

186.   Defendants represent that the subject of the owner-operator opportunity is of a particular standard, quality, grade, style, prescription, or model, when it is not. ORC § 1345.02 (B) (2).

187.   Defendants represent that the subject of the owner-operator opportunity has been supplied in accordance with a previous representation, when it has not,. ORC § 1345.02 (B) (5).

188.   Defendants represent that the subject of the owner-operator opportunity will be supplied in greater quantity than the Defendants intended. ORC § 1345.02 (B) (6).

189.   Defendants knew at the time these consumer transactions were entered into of the inability of Ohio Consumer Protection Class members to receive a

substantial benefit from the subject of the owner-operator opportunity. ORC § 1345.03 (B) (3).

190.   Defendants required Ohio Consumer Protection Class members to enter into a consumer transaction on terms Defendants knew were substantially one-sided in favor of Defendants.  ORC § 1345.03 (B) (5).

191.   Defendants knowingly made a misleading statement of opinion – namely, the number of miles offered – on which Ohio Consumer Protection Class members were likely to rely to the their detriment. ORC § 1345.03 (B) (6).

192.   As a direct and proximate result of defendants' violation of the Ohio Sales Consumer Protection Act, Plaintiff and Ohio Consumer Protection Class member have suffered monetary damages and are entitled to recover three times the amount of her monetary damages, punitive damages, and attorneys fees and costs.

### FIFTEENTH CAUSE OF ACTION
**Constructive Fraud and Negligent Misrepresentation**
**(On Behalf of the Ohio Consumer Protection Class)**

193.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

194.   The concealment of material facts which one is bound under the circumstances to disclose constitutes constructive fraud.  A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.

195.   Defendants offered Plaintiff and the Class the Driving Opportunity from which they would be able to develop a career and earn positive income.  Once Defendants embarked on making such a business offer to the Plaintiff and putative Class, Defendants owed them a duty of full disclosure.  Plaintiff and the putative

1   Class relied on such offer, representations, and omissions in purchasing the Driving

2   Opportunity.   However, Defendants did not disclose the material facts of the high

3   turnover of Drivers purchasing the Driving Opportunity and that most if not all

4   Drivers failed to achieve such a career and positive income over any sustained period.

5   Plaintiff and the putative class relied on such omissions in purchasing the Driving

6   Opportunity.  Had Defendants provided the full truth, Plaintiff and the putative class

7   would not have purchased the Driving Opportunity.

8        196.   Defendants also made representations about miles, earnings, and average

9   lengths of haul Drivers could expect.  Plaintiff and the putative class relied on such

10  representations in purchasing the Driving Opportunity.  However, Defendants did not

11  disclose the material facts that most if not all Drivers did not achieve such mileage,

12  earnings, and average lengths of haul over any sustained period of time.  Plaintiff and

13  the putative class relied on such omissions in purchasing the Driving Opportunity.

14  Had Defendants provided the full truth, Plaintiff and the putative class would not

15  have purchased the Driving Opportunity.

16       197.  Plaintiff and the putative Class suffered damages as a result of

17  Defendants' material misstatements and omissions in that they paid leases and made

18  other payments for the Driving Opportunity and were defrauded out of their labor.

19       198.   In the conduct described above, Defendants acted intentionally with

20  malice and/or with reckless disregard toward the rights of Plaintiff and the putative

21  Class entitling Plaintiff and the putative Class to an award of punitive damages under

22  applicable law.

23                    **THIRTEENTH CAUSE OF ACTION**
                              **Unjust Enrichment**
24            **(On Behalf of the Ohio Consumer Protection Class)**

25       199.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though

26  fully set forth herein.

27

28

200.   Because of Defendants' wrongful and fraudulent conduct and its failure to disclose material facts as described above, Plaintiff and the Drivers have conferred benefits upon Defendants.

201.   Defendants were at all relevant times aware that the benefits conferred upon it by the Drivers were the result of its wrongful conduct.

202.   Allowing Defendants to retain these unjust profits and other benefits would offend traditional notions of justice and fair play.  Under these circumstances, it would be inequitable and unjust for Defendants to retain the benefits and allowing it to do so would induce companies to engage in fraudulent and/or other wrongful conduct to increase profits.

203.   Defendants is in possession of funds and benefits that were wrongfully obtained from Drivers and such funds should be restored and/or disgorged as ill-gotten gains.

204.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)  Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the California Labor Code;

b)  For a declaratory judgment that Defendants have violated the California Labor Code and public policy as alleged herein;

c)  For a declaratory judgment that Defendants have violated California Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

d)  For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants,  its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

e) For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

f) For an order awarding Plaintiff and the Class and Collective members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money and other valuable consideration paid for the Driving Opportunity, actual damages, punitive damages, and all other sums of money owed to Plaintiff and Class members, together with interest on these amounts, according to proof;

g) For an order awarding Plaintiff and the Class members civil penalties pursuant to the California Labor Code provisions cited herein, with interest thereon;

h) For an award of reasonable attorneys' fees as provided by the California Labor Code; California Code of Civil Procedure § 1021.5; the FLSA; and/or other applicable law;

i) For all costs of suit;

j) For interest on any damages and/or penalties awarded, as provided by applicable law; and

k) For such other and further relief as this Court deems just and proper.

Dated: January 22, 2019                Respectfully submitted,


                                       */s/ Carolyn H. Cottrell*
                                       Carolyn H. Cottrell
                                       David C. Leimbach
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY
                                       WOTKYNS LLP
                                       2000 Powell Street, Suite 1400
                                       Emeryville, California 94608
                                       Telephone: (415) 421-7100
                                       Facsimile: (415) 421-7105

                                       Robert S. Boulter
                                       LAW OFFICES OF ROBERT S. BOULTER

1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile:  (415) 233-7101

Attorneys for Plaintiff and the Putative Classes
and Collective

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: January 22, 2019                    Respectfully submitted,


*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
David C. Leimbach
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile:  (415) 233-7101

Attorneys for Plaintiff and the Putative Classes and Collective